IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTWANE JOHNSON, 2009 Saint Thomas Dr. #200 Waldorf MD, 20602, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

v.

NEXA MORTGAGE, LLC, 5559 S Sossaman Rd, Bldg 1 Ste 101, Mesa, Arizona 85212,

Defendant.

Case No. 8:26-cv-02799-TDC

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

RELEVANT ALLEGATIONS .......... 4

APPLICABLE LEGAL STANDARDS .......... 5

ARGUMENT .......... 6

I. The Complaint Fails Because Plaintiff Did Not Properly Allege a Theory of Liability. .......... 6

II. Plaintiff Fails to Plead Facts Supporting Key Elements of His TCPA Claim (Count I). .......... 16

III. Plaintiff Fails to Plead Facts Supporting Key Elements of his MTSA Claim (Count II). .......... 21

IV. Plaintiff Fails to Plead Facts Supporting His Requests for Treble Damages. .......... 21

V. Any Dismissal Should Be With Prejudice. .......... 21

CONCLUSION .......... 22

## TABLE OF AUTHORITIES

### CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ........ passim

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ........ 7

*Andersen v. Nexa Mortg., LLC*,
2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ........ 12, 17, 21

*Anthony v. Brian Mktg. Grp.*,
2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) ........ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 10

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) ........ 11

*Bank v. City of Menasha*,
627 F.3d 261 (7th Cir. 2010) ........ 2

*Bank v. Consumer Tax Advoc., LLC*,
2025 WL 1640500 (E.D.N.Y. Feb. 5, 2025) ........ 8

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ........ 14

*Barker v. Sunrun Inc.*,
2019 WL 1983291 (D.N.M. Apr. 29, 2019) ........ 15

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ........ 8, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5, 6, 10, 16

*Bell v. Hawx Servs., LLC*,
2025 WL 2533371 (E.D. Cal. Sept. 3, 2025) ........ 16, 17

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) ........ 10

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ........ 8

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ........ 8

*Campbell v. Ojeda*,
2012 WL 1111418 (S.D.W. Va. Mar. 30, 2012) ........ 6

*Canary v. Youngevity Int'l, Inc.*,
2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ........ 21

*Cosenza v. Nice North America, LLC*,
2026 WL 2248829 (C.D. Ill. Aug. 4, 2026) .......... 3, 10, 12, 13

*Cunningham v. Britereal Mgmt., Inc.*,
2020 WL 7391693 (E.D. Tex. Nov. 20, 2020) .......... 19

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023) .......... 15

*Cunningham v. McDonald*,
2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018) .......... 18

*Dahdah v. Rocket Mortgage LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023) .......... 17, 18

*Doyle v. GoHealth, LLC*,
2023 WL 3984951 (D.N.J. Mar. 30, 2023) .......... 13, 14

*Drew v. Lexington Consumer Advocacy, LLC*,
2016 WL 1559717 (N.D. Cal. Apr. 18, 2016) .......... 3

*Eastern Shore Markets, Inc. v. J.D. Assoc. Long Term Disability P'ship*,
213 F.3d 175 (4th Cir. 2000) .......... 6

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) .......... 17

*Frame v. Cal-W. Reconveyance Corp.*,
2011 WL 3876012 (D. Ariz. Sept. 2, 2011) .......... 21

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .......... 9

*Gallipeau v. Renewal by Andersen LLC*,
742 F. Supp. 3d 508 (D.S.C. 2024) .......... 3, 7, 9

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) .......... 2, 16, 17, 19

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) .......... 17

*Gulden v. Consol. World Travel Inc.*,
2017 WL 3841491 (D. Ariz. Feb. 15, 2017) .......... 2, 16, 17

*Hamilton v. El-Moussa*,
2020 WL 2614625 (C.D. Cal. Feb. 10, 2020) .......... 14

*Hicks v. Alarm.com*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) .......... passim

*Horton v. Molina Healthcare of Texas, Inc.*,
2026 WL 490216 (N.D. Tex. Feb. 6, 2026) .......... 15, 18

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) .......... 3, 7, 10

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
2015 WL 13648356 (W.D. Ark. June 16, 2015) .......... 10

*In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013) .......... 7, 8

*In re Miller*,
2023 WL 6542931 (Bankr. M.D.N.C. Oct. 6, 2023) .......... 12

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015) .......... 1, 9

*James v. Gage*,
2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019) .......... 12

*Johnson v. Cap. One*,
2019 WL 1936147 (D. Md. Apr. 30, 2019) .......... 21

*Katz v. Caliber Home Loans, Inc.*,
2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) .......... 11

*Kemen v. Cincinnati Bell Tel. Co., Inc.*,
2023 WL 361136 (S.D. Ohio Jan. 23, 2023) .......... 18

*King v. Burwell*,
135 S.Ct. 2480 (2015) .......... 20

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) .......... 6

*Kirtz v. Trans Union LLC*,
46 F.4th 159 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024) .......... 20

*Koller v. OX AppSec Security, Inc.*,
2026 WL 2935851 (E.D. Mo. Sept. 30, 2026) .......... 19

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
780 F.3d 1101 (11th Cir. 2015) .......... 21

*Lowrey v. Twilio, Inc.*,
2026 WL 2958730 (W.D. Va., Oct. 1, 2026) .......... 19

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013) .......... 12

*Mathis v. Interstate Cont. Cleaning Servs., Inc.*,
2018 WL 6421733 (D.S.C. July 9, 2018) .......... 22

*Matthews v. Senior Life Ins. Co.*,
2025 WL 1181789 (E.D. Va. Apr. 22, 2025) .......... passim

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) .......... 11, 15

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .......... 8, 13

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)........................................................................9

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ....................................................................19

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015)............18

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)....................................................................11

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ..........................................................3, 7, 15

*Norman v. Northern Ill. Gas Co. Inc*.,
2014 WL 184774 (N.D. Ill. Jan. 16, 2014).........................................................................18

*Orange Const. Corp. v. Travelers Cas. & Sur. Co. of Am.*,
2010 WL 1506634 (S.D. W.Va. Apr. 14, 2010)....................................................................6

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .......................................................................7

*Phillips v. Dukes*,
2018 WL 835709 (D. Md. Feb. 12, 2018) ..........................................................................21

*Precision Links Inc. v. USA Prods. Grp., Inc*.,
2009 WL 801781 (W.D.N.C. Mar. 25, 2009)........................................................................6

*Randall v. U.S.*,
30 F.3d 518 (4th Cir. 1994) .................................................................................................6

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)............................................................ passim

*Rogers v. Interstate Nat'l Dealer Servs. Inc.*,
2020 WL 4582689 (N.D. Ohio Aug. 10, 2020)...............................................................9, 12

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
2022 WL 2713278 (N.D. Iowa June 9, 2022) ....................................................................20

*Saunders v. NCO Fin. Sys., Inc.*,
910 F. Supp. 2d 464 (E.D.N.Y. 2012)...................................................................................2

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020)........................................................................7

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)......................................................................9, 14

*Smith v. Getmehealthcare, LLC*,
2025 WL 3771271 (M.D. Fla. Dec. 31, 2025) ....................................................................17

*Smith v. Vision Solar, LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020)......................................................................18

*Sprye v. Ace Motor Acceptance Corp.*,
2017 WL 1684619 (D. Md. May 3, 2017) .......... 6

*Syed v. Mohammad*,
2016 WL 8731783 (E.D. Va. Apr. 1, 2016) .......... 6

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) .......... 16

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) .......... 16, 17

*Wick v. Twilio Inc.*,
2017 WL 2964855 (W.D. Wash. July 12, 2017) .......... 9

*Wilson v. MEDVIDI Inc.*,
2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .......... 12, 13, 14

*Woodard v. Health Ins. All.*,
2024 WL 942629 (N.D. Ill. Mar. 5, 2024) .......... 10

**STATUTES**

47 U.S.C. § 227(c) .......... passim

Md. Code Ann., Com. Law § 14-4502 .......... passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2) .......... passim

47 C.F.R. § 64.1200(f)(15) .......... 4, 16

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... passim

## INTRODUCTION

In his two-count Complaint, Plaintiff Antwane Johnson ("Plaintiff") conclusorily alleges, without sufficient requisite factual support, that Defendant NEXA Mortgage, LLC ("NEXA") violated (i) the "Do Not Call" provision of the Telephone Consumer Protection Act ("TCPA") and its related implementing regulations (*i.e.*, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)), and (ii) the provision of Maryland's analog statute, the Maryland Telephone Solicitations Act ("MTSA"), governing "automated" telemarketing calls (*i.e.,* Md. Code Ann., Com. Law § 14-4502). Both of these claims rest squarely on ill-described phone calls that Plaintiff concludes were made to his cellular phone number either by "Defendant and/or [by] its affiliates, agents, and/or other persons or entities acting on Defendant's behalf." *See, e.g.,* Dkt. 1, ¶¶ 15-29, 48, 50, 54. Yet, his Complaint contains zero facts supporting a plausible inference that NEXA bares any legal responsibility for the subject calls, let alone that they even violated the TCPA or any other law in the first instance. As demonstrated herein, such allegations are woefully insufficient to survive dismissal under federal pleading standards in any federal case, and especially cannot do so under the weight of applicable federal authority on the standards for properly pleading TCPA and equivalent claims cited below.

Indeed, while the TCPA is an important remedial statute designed to protect consumers from harassing telemarketers, its remedial purpose does not afford TCPA plaintiffs special pleading deference or give those armed with mere conclusions a free pass to discovery. This is for good reason. As the FCC has noted, the TCPA has unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" ever since its enactment in 1991. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Yet, this is unsurprising given the broad financial relief the TCPA affords entrepreneurial plaintiffs—*i.e.*, up to $500 per violative call, which can be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(c)(5). And while attorneys' fees

are not afforded under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from innocent defendants through the threat of expensive class action litigation. *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). *See also Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (discussing one purpose of the *Iqbal*/*Twombly* pleading standard is to prevent "settlement extortion" and noting that plaintiffs can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit") (citations omitted).

It is against this backdrop, therefore, that federal judges have widely recognized that they must dutifully fulfill their critical "gatekeeping" role under the Federal Rules in TCPA cases (especially in putative class actions like this one) to ensure that TCPA claims have sufficient plausible factual support, before subjecting defendants to the high cost of discovery and trial. As such, federal district courts across the country, including in the Fourth Circuit, have not hesitated to dismiss TCPA complaints lacking in such requisite supporting facts at the pleadings stage, while still honoring the statute's intended remedial purpose. Plaintiff's defective Complaint here should suffer the same fate and be dismissed under Fed. R. Civ. P. 12(b)(6) for at least the following reasons:

<u>**First**</u>, as one federal district court noted when dismissing a similarly-deficient complaint, the caller's "identity is a ***necessary*** element of ***all***" TCPA claims. *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (emphasis added). Along these lines, it is well established in the Fourth Circuit and nationally that, to successfully plead <u>any</u> TCPA claim under any provision, all plaintiffs must first "identify" the caller by adequately alleging a theory of liability against the defendant—*i.e.,* direct or vicarious liability—or else they face a complete dismissal under Rule 12(b)(6). *See, e.g., Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2-3 (E.D. Va. Apr. 15, 2019); *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3-4 (E.D. Va. Apr. 22, 2025);

*Gallipeau v. Renewal by Andersen LLC*, 742 F. Supp. 3d 508, 516-520 (D.S.C. 2024); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *2-10 (E.D. Va. Nov. 12, 2020); *Hicks v. Alarm.com*, 2020 WL 9261758, at *4-5 (E.D. Va. Aug. 6, 2020); *Hurley v. Messer*, 2018 WL 4854082, at *3 (S.D.W.Va. Oct. 4, 2018); *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023). This steadfast rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory supporting facts, that either NEXA: (i) itself, and not a third party, literally took the steps to "physically" place each call at issue directly to him, as required to plead direct TCPA liability; or (ii) was in a common law agency relationship with a third party who did physically place the subject calls (the touchstone of which in a TCPA case is having "control" over the "manner and means" of that third party's call campaign), as required to plead vicarious TCPA liability. *Id*. At the same time, it is equally well-settled that merely parroting the statutory text or case law and baldly concluding that the "defendant and/or its agents" made the subject calls (as Plaintiff did here) is insufficient to plead any TCPA liability theory, without more. *See, e.g., Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *1-6 (C.D. Ill. Aug. 4, 2026) (dismissing and rejecting a similar "either/or theory of liability" pled in a TCPA complaint brought by some of the same counsel representing Plaintiff).

In short, TCPA plaintiffs cannot meet the bedrock *Iqbal*/*Twombly* pleading standard by conclusorily alleging "***someone*** violated the TCPA," but rather must plead enough specific plausible facts to show there is a valid theory under which the specific defendant in the case could be liable. *Drew v. Lexington Consumer Advocacy, LLC*, 2016 WL 1559717, at *8 (N.D. Cal. Apr. 18, 2016) (emphasis original). As Plaintiff plainly failed to do so in this case, and since his state law claim suffers from the same fatal defect, his entire Complaint is doomed to dismissal on this basis alone.

**<u>Second</u>**, beyond the threshold fatal pleading defect above, Plaintiff also failed to allege sufficient (or any) plausible facts supporting other essential elements of his two asserted claims, which further warrants a complete dismissal of his Complaint under Rule 12(b)(6). To successfully

plead his TCPA claim in Count I, for example, Plaintiff must plausibly allege facts supporting an inference that he *inter alia*: (1) received more than one "telephone solicitation" as defined by the TCPA's regulations within a 12-month period; (2) qualifies as a "residential telephone subscriber" under the TCPA; and (3) personally registered his own cell number on the National DNC Registry, as the plain language of the statute expressly requires. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & 64.1200(f)(15). Yet, Plaintiff's Complaint contains no such facts. Plaintiff also pleads no actual facts supporting an inference an "automated" calling system governed by the MTSA was used here, in support of his state law claim in Count II. And of course, Plaintiff's naked conclusions on these fronts do not pass muster under *Iqbal*/*Twombly*, either.

**Third**, Plaintiff pleads no facts suggesting there has been a "knowing" or "willful" violation, entitling him to treble damages. Those allegations should be dismissed at the minimum.

**Finally**, Plaintiff has already had his day in Court and had the chance to amend his pleading to address the foregoing fatal deficiencies. He declined to do so. He should not be afforded a third opportunity and, therefore, NEXA submits that any dismissal should be with prejudice.

## RELEVANT ALLEGATIONS

In summary, Plaintiff's Complaint alleges (or, rather concludes) that, despite his cellular phone number purportedly being listed on the National DNC Registry "since May 4, 2012," Plaintiff "received at least twelve telemarketing calls placed on behalf of" NEXA without his consent, starting "on or about June 25, 2026, and continuing through at least July 3, 2026." Dkt. 1, ¶¶ 17, 19, 21. Plaintiff concludes these "calls were placed using automated dialing technology from numerous different telephone numbers" (*id*. ¶ 22), though he does not provide any caller's phone numbers.

Plaintiff somehow manages to provide ***even less*** detail about the content of these alleged calls, let alone to plead any plausible facts identifying the actual caller(s) or tying the subject calls to NEXA. For example, Plaintiff asserts that, "on June 26, 2026, [he] received two calls placed from

the same telephone number within a short period of time; Plaintiff declined to answer one of the calls, and on the other, Plaintiff answered, stated that he was not interested, and ended the call." *Id.* ¶ 23. Plaintiff then vaguely claims that, "[o]n each of the calls [he] answered, the caller identified himself or herself as calling on behalf of Nexa Mortgage and asked to speak with 'Darryl' or 'Darryl Price'"—a person who he purportedly does not know. *Id.* ¶ 24. Plaintiff further claims that, "[o]n July 1, 2026, [he] spoke with a caller who identified himself as calling from Nexa Mortgage on behalf of 'Darryl Price' [*sic*] and provided a name and a callback telephone number. *Id.* ¶ 25. He claims that he "informed [this] caller, as he had informed callers on numerous prior occasions, that Nexa Mortgage was calling the wrong telephone number and that its calls had been placed from many different telephone numbers." *Id.* Plaintiff then avers that, "[d]uring a subsequent call that same day, [he] obtained an email address purportedly associated with Nexa Mortgage" and "thereafter sent an email to that address advising that Nexa Mortgage was calling the wrong number and requesting that the calls stop" but he did not receive a response to his email; and then he "received at least one additional call placed on behalf of Nexa Mortgage after he sent [the email], on July 3, 2026." *Id.* ¶ 27. Based on these threadbare (and in certain instances unintelligible) allegations, Plaintiff contends "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" violated the TCPA, and "utilized, or caused to be utilized, a commercial automated calling platform" in violation of the MTSA. *Id.* ¶¶ 48, 54. He also seeks class treatment. *Id.* ¶ 29. However, Plaintiff's allegations fall far short of complying with federal pleading standards.

## APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal where a plaintiff fails to state a claim for relief. Naturally, any legal claim brought in federal court mandates the pleading of sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not do. *Id.* Naked allegations without factual enhancements "stop[] short of the

line between possibility and plausibility of entitlement to relief." *Id*. (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Further, though this Court must generally accept "well-pled" facts in the Complaint as true under Rule 12(b)(6), conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions couched as fact do not suffice, need not be taken as true, and do not prevent dismissal. *See, e.g., King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Orange Const. Corp. v. Travelers Cas. & Sur. Co. of Am.*, 2010 WL 1506634, at *1 (S.D. W.Va. Apr. 14, 2010); *Campbell v. Ojeda*, 2012 WL 1111418, at *4 (S.D.W. Va. Mar. 30, 2012); *Sprye v. Ace Motor Acceptance Corp.,* 2017 WL 1684619, at *2 (D. Md. May 3, 2017) (citations omitted); *Precision Links Inc. v. USA Prods. Grp., Inc*., 2009 WL 801781, at *1 (W.D.N.C. Mar. 25, 2009) (citing *Eastern Shore Markets, Inc. v. J.D. Assoc. Long Term Disability P'ship,* 213 F.3d 175, 180 (4th Cir. 2000)). *See also Syed v. Mohammad*, 2016 WL 8731783, at *1 (E.D. Va. Apr. 1, 2016) ("[L]egal conclusions unsupported by allegations of specific facts are insufficient to withstand a motion to dismiss under Rule 12(b)(6).") (citing *Randall v. U.S.,* 30 F.3d 518, 522 (4th Cir. 1994)).

## ARGUMENT

As demonstrated below, Plaintiff's Complaint does not remotely meet federal pleading standards, and thus it is ripe for dismissal in its entirety under Rule 12(b)(6) on multiple grounds.

### I. The Complaint Fails Because Plaintiff Did Not Properly Allege a Theory of Liability.

As a threshold fatal defect, the Complaint fails to adequately allege a theory of liability against NEXA. As noted above, it is well-established that, for a TCPA plaintiff to properly identify the caller at the pleadings stage, one of two theories of liability must be adequately pled in every case to avoid a dismissal under Rule 12(b)(6): direct liability or vicarious liability. More specifically, "[f]or a person to 'make' [or 'initiate'] a call" and be held liable "under the TCPA, the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person

who made the call"—and of course, there must be actual ***facts*** pled supporting such theories. *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *Accord Matthews,* 2025 WL 1181789, at *3-4 (citing *Aaronson*, 2019 WL 8953349, at *1-2). As demonstrated by the multiple cases cited above and below, federal district courts across the Fourth Circuit (and indeed nationally) have firmly adopted this rule and thus have often dismissed entire TCPA complaints lacking such facts on these grounds. *See, e.g., Aaronson,* 2019 WL 8953349, at *2-3; *Matthews*, 2025 WL 1181789, at *3-4; *Gallipeau*, 742 F. Supp. 3d at 516-520; *Scruggs,* 2020 WL 9348208, at *2-10; *Hicks*, 2020 WL 9261758, at *4-5; *Hurley*, 2018 WL 4854082, at *3. Further, it is equally well-settled that a plaintiff's failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim under any provision in its <u>entirety</u> under Rule 12(b)(6), regardless of whether facts were pled supporting other elements of the claim(s). *See, e.g., id.*; *see also Nelums*, 2023 WL 5607594, at *9 ("Because Plaintiff fails to satisfy the ***first elements*** of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.) (emphasis added). Here, Plaintiff failed to properly allege either.

As to the former theory, federal courts across the country have uniformly recognized that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which in this context means to "***physically*** place" each call at issue directly to the plaintiff. *See, e.g., Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (discussing accepted standards for pleading TCPA liability theories and dismissing on these grounds where the plaintiff failed to allege plausible facts in support) (emphasis added). *Accord Hicks*, 2020 WL 9261758, at *5; *Gallipeau*, 742 F. Supp. 3d at 517; *Aaronson,* 2019 WL 8953349, at *2.

In other words, it is settled that, for direct TCPA liability to attach, the defendant itself must literally pick up the phone and physically place (or "make" or "initiate") each communication at issue directly to the plaintiff. *See, e.g., Aaronson,* 2019 WL 8953349, at *2-3 (dismissing on this basis where, like here, the "plaintiff's allegations d[id] not show plausibly that [the defendant itself] actually, physically initiated the telephone calls at issue"); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing claim brought by some of the same counsel representing Plaintiff on this basis, where the plaintiffs did not plausibly allege the moving "[d]efendant itself" physically made the subject calls); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) (dismissing on this basis, and holding TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added); *Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on this basis where "none of [the plaintiff's] factual allegations" in the complaint, "even if accepted as true, establish[ed] direct liability on [the defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a call directly to the plaintiff); *Bank v. Consumer Tax Advoc., LLC,* 2025 WL 1640500, at *7–8 (E.D.N.Y. Feb. 5, 2025) (dismissing on this basis where there was "no direct allegation [pled] that [the defendant] was the entity that actually initiated the call" at issue).[1]

Conversely, direct TCPA liability cannot be based on calls made by third parties and thus "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at

[1] While provisions of the TCPA (and some relevant case law) will use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the subject calls.

*3 (N.D. Ill. Mar. 23, 2022) (dismissing and holding "a [TCPA] defendant 'generally does not initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"); *Gallipeau,* 742 F. Supp. 3d at 517 (ruling similarly). In this same vein, "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes, either. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) ("Plaintiff argues that because he received a call 'on behalf of' [defendant], [defendant] is directly liable under the TCPA. Plaintiff is mistaken."). Rather, logically and as a matter of settled federal law, there must be a "direct connection between a person or entity and the making of a call" sufficiently alleged to plead a direct TCPA liability theory. 30 FCC Rcd. at 7980.

To meet federal pleading requirements in this regard, however, courts have consistently found that "[m]erely alleging that [a defendant and/or an agent] 'made' or 'initiated' [a] call" in a conclusory fashion, as Plaintiff did here, "is not sufficient to allege a [direct] TCPA [liability] claim" under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *Accord Aaronson,* 2019 WL 8953349, at *2-3 ("[A]t the pleadings stage, [a] plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" to avoid a dismissal on this basis.). *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis and holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing TCPA claim on this basis, where the plaintiffs merely concluded that one defendant "physically" placed the subject calls, noting that the "[p]laintiffs have not pleaded any ***facts*** supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Smith v. Direct Building Supplies, LLC*, 2021

WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing on this basis where the plaintiff "provide[d] no details specifying how [he] knew [the defendant] in fact [physically] placed these calls"); *Woodard v. Health Ins. All.*, 2024 WL 942629, at *2-3 (N.D. Ill. Mar. 5, 2024) (dismissing on these grounds and others, holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on this basis where the plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls, without additional requisite supporting facts identifying the caller).

Additionally, federal district courts in and beyond this Circuit have held that TCPA plaintiffs must adequately plead plausible facts identifying the caller and supporting direct (or, alternatively, vicarious) TCPA liability in all cases ***without the benefit of discovery*** to avoid a Rule 12(b)(6) dismissal. *See*, *e.g.*, *Hurley,* 2018 WL 4854082, at *4 (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc*., 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (ruling similarly). *See also Twombly*, 550 U.S. at 559 (emphasizing the importance of the requirement of plausibility at the motion to dismiss stage, partly because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial).

Myriad courts have also recognized that the content of an alleged call—even if the defendant's name or its products are mentioned on the call—is not dispositive of this issue standing alone. *See, e.g., Scruggs*, 2020 WL 9348208, at *6-10 (dismissing on this basis; calls from someone who stated they were "associated with" defendant were deemed insufficient); *Cosenza*, 2026 WL 2248829, at *5 (dismissing and rejecting argument that "the fact that the representative provided him

the Defendant's website and the prerecorded message promoted products associated with Defendant renders direct liability plausible" standing alone); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *1–5 (N.D. Cal. Mar. 28, 2018) (dismissing on this basis, even though at-issue text identified the defendant by name and had a link to its website); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'" without additional supporting facts); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls").[2]

In short, "simply asserting a purported fact [as to a caller's identity] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing on this basis). Instead, "[a]s a party to these calls, Plaintiff 'should be able" and indeed is ***required*** "to provide greater detail" to plausibly allege a direct TCPA liability theory under Rule 12(b)(6). *Matthews*, 2025 WL 1181789, at *3 (quoting *Scruggs*, 2020 WL 9348208, at *6) (dismissing on this basis).

Applying the foregoing deeply-rooted legal principles promptly reveals that Plaintiff failed to adequately allege a direct TCPA liability in this instance. In fact, the only allegations pled in the entire Complaint as to the identity of the callers are wholly conclusory, and state that (i) "[o]n each of the calls Plaintiff answered, the caller identified himself or herself as calling on behalf of Nexa Mortgage and asked to speak with 'Darryl' or 'Darryl Price'" and (ii) "[o]n July 1, 2026, Plaintiff

[2] This accepted approach to evaluating the factual sufficiency of TCPA liability allegations at the pleadings stage (where the focus is not solely on content) is logical, comports with *Iqbal*/*Twombly*, and recognizes anyone can say virtually anything on a call and that companies often hire third parties to make calls for them. A call "from Jeff Bezos" does not mean Jeff Bezos himself placed it.

spoke with a caller who identified himself as calling from Nexa Mortgage on behalf of 'Darryl Price' and provided a name and a callback telephone." Dkt. 1, ¶¶ 24. 25.[3] But such ill-pled allegations are insufficient to meet federal pleading standards in any federal case, much less to plausibly allege a direct TCPA liability theory in a TCPA case, as myriad courts have found. *See, e.g., Wilson v. MEDVIDI Inc*., 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing similar complaint by the some of the same counsel representing Plaintiff on this basis); *Cosenza*, 2026 WL 2248829, at *5 (same); *Rogers*, 2020 WL 4582689, at *3 ("Plaintiff argues that because he received a call 'on behalf of' [defendant], [defendant] is directly liable under the TCPA. Plaintiff is mistaken.").

Beyond that, Plaintiff just parrots the statutory text and concludes that "***Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf***" placed the subject calls, or the like, with no factual enhancement supporting any plausible inference of direct <u>or</u> vicarious TCPA liability against NEXA. *See, e.g.,* Dkt. 1, ¶¶ 21, 24-26, 29, 48, 50, 56 (emphasis added). In other words, Plaintiff seemingly contends (but without any supporting facts) that either ***NEXA <u>and/or</u> countless unidentified third parties possibly called him***. Yet, federal courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim of ***any*** sort" under bedrock federal pleading standards. *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013).[4] Such is particularly true in this context.

In fact, federal district courts across the country have consistently held that TCPA plaintiffs cannot plausibly allege a TCPA liability theory and sidestep a dismissal on this basis simply by

---

[3] Plaintiff does not explain how one call could be both "from" NEXA <u>and</u> "on behalf" of Darryl Price. Nor could he do so, as this allegation is non-sensical and inherently implausible.

[4] *See also In re Miller*, 2023 WL 6542931, at *21, n.39 (Bankr. M.D.N.C. Oct. 6, 2023) (courts are "free to disregard" internally inconsistent allegations in a pleading when deciding a 12(b)(6) motion) (citations omitted); *James v. Gage,* 2019 WL 1429520, at *14 (S.D.N.Y. Mar. 29, 2019) ("[A] court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (internal quotation marks, citations, and alterations omitted)).

taking an equivocating "either/or" approach and baldly concluding that either the defendant and/or its unidentified third party "agents" (or the like) placed the subject calls, or "caused" them to be placed—just like Plaintiff attempts here. *See, e.g., Cosenza*, 2026 WL 2248829, at *3, 5 (holding "Plaintiff's either/or theory of liability"—*i.e.*, that "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff"— "ask[ed] the Court to blur the line between" the accepted standards for pleading direct and vicarious TCPA liability theories by "erasing the very distinction between seller and telemarketer" found in the statute); *Matthews,* 2025 WL 1181789, at *3 (holding allegations the subject calls were "from" defendant insufficient for direct liability, without more) (citing, *inter alia*, *Aaronson* and *Scruggs*); *Wilson,* 2025 WL 2856295, at *4 ("Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent."); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing and holding allegations the subject calls were "from Defendant, its employees and/or agents" were insufficient); *Melito,* 2015 WL 7736547, at *4 (dismissing and holding that "Plaintiffs' conclusory assertions that [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement."). This Court should reach the same conclusions here and dismiss on this basis.

That Plaintiff vaguely claims to have separately "obtained an email address purportedly associated with" NEXA at some point after most of the at-issue calls (*see* Dkt. 1, ¶ 26) or was given a "callback" number (*id.,* ¶ 25) is of no moment, and certainly does not move the needle on his claims from "possible" to "plausible." On the one hand, Plaintiff does not allege any of the ***callers*** provided that email address to him, or that NEXA responded when he emailed it (in fact, he alleges the opposite – that he received no response). On the other hand, Plaintiff does not allege the supposed

"callback" number belongs to NEXA, let alone that he called it and reached NEXA. Nevertheless, such facts (even if pled) would <u>not</u> support a viable TCPA liability theory, standing alone, as courts have held. *See, e.g., Hamilton v. El-Moussa,* 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (follow up email from defendant alone insufficient to allege TCPA liability); *Barnes,* 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller); *Hicks,* 2020 WL 9261758, at *5 (a caller providing a call back number allegedly belonging to the defendant deemed insufficient for direct TCPA liability, without more).

In the end, Plaintiff's Complaint is perhaps more notable for what facts it <u>omits</u> in this regard. For example, Plaintiff does <u>not</u> allege *inter alia,* that: (i) the phone number used to place the subject calls (which is not provided) is owned by NEXA; (ii) he called that number (or the "callback number" he was given) and reached NEXA directly; (iii) his Caller ID identified "NEXA" as the caller; or (iv) he ever spoke with any NEXA "employee" as opposed to the countless unidentified "affiliates, agents, and/or other persons or entities acting on [its] behalf" that he speculates were involved. Such facts, if properly pled, ***might*** support a direct TCPA liability theory, as other courts have found. *See, e.g., Matthews,* 2025 WL 1181789, at *3; *Wilson,* 2025 WL 2856295, at *4; *Aaronson*, 2019 WL 8953349, at *2-3; *Rogers*, 2023 WL 2646468, at *5; *Doyle*, 2023 WL 3984951, at *4-6; *Smith,* 2021 WL 4623275, at *3-4; *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019) (each dismissing on the basis where the complaints lacked such critical contextual details). The omission of such easily-pled facts is fatal to Plaintiff's Complaint on direct TCPA liability grounds.

Moreover, despite including legal buzzwords in his Complaint vaguely suggestive of possible third party "agent" or "affiliate" involvement as noted above, Plaintiff does not assert any actual factual allegations in his Complaint remotely supporting an inference that NEXA was in a common law agency relationship with any third party that called him. *See, e.g., Wilson*, 2025 WL

2856295, at *4 ("[W]hile alleging that 'Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA,' [], the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such 'unadorned labels' are insufficient as a matter of law to allege any agency relationship."). Nor does he allege any facts suggesting NEXA had specific "control" over the "manner and means" of any third party caller's telemarketing campaign, which is the well-established touchstone of vicarious TCPA liability and must also be adequately pled in all cases. *See, e.g., Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023); *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6 (all dismissing on this basis). Accordingly, his Complaint fails and should be dismissed on vicarious TCPA liability grounds, too. *See, e.g., Aaronson*, 2019 WL 8953349, at *3 (dismissing where plaintiff did not adequately plead facts showing agency).

Finally, Plaintiff's failure to properly allege a TCPA liability theory for Count I is also fatal to his related analog state law claim in Count II, which is based on the same operative ill-pled "factual" allegations as to the callers' identities. *See, e.g., Hicks*, 2020 WL 9261758, at *5 ("The [plaintiff's state analog] claim must fail at this stage for similar reasons as the parallel TCPA claim."); *Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *11 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted*, 2026 WL 488753 (Feb. 20, 2026) ("Although Horton asserts that 'Defendants' are liable under Texas state law because they violated the TCPA [], the undersigned concludes that Horton has failed to plausibly plead a TCPA claim. Therefore, his state law [] claim likewise fails.") (internal citations omitted); *Barker v. Sunrun Inc.*, 2019 WL 1983291, at *4 (D.N.M. Apr. 29, 2019) (dismissing entire complaint under Rule 12(b)(6) where plaintiff did not plausibly allege a viable theory of liability under the TCPA, including analog state law claims); *Nelums*, 2023 WL 5607594, at *9 (ruling similarly). Thus, his <u>entire</u> Complaint should be dismissed on this basis.

* * *

All told, Plaintiff's failure to properly allege a plausible direct or vicarious liability theory in this case is not some minor pleading defect to be sorted out in discovery. Rather, as shown above, this is a critical legal distinction that myriad courts have found must first be properly pled in every case before subjecting defendants to discovery, liability, and potential statutory damages—all of which can be costly and potentially ruinous, especially in class actions like this. As Plaintiff failed to do so here, his whole Complaint should be dismissed under Rule 12(b)(6) on these grounds alone.

## II. Plaintiff Fails to Plead Facts Supporting Key Elements of His TCPA Claim (Count I).

Plaintiff also fails to plead sufficient facts supporting other essential elements of his asserted TCPA claim in Count I. Indeed, the fatal pleading deficiencies with that claim are multi-faceted:

**First**, Section 227(c) of the TCPA, on its face, applies only "to telemarketing and solicitation calls," as opposed to all "unwanted" communications, like informational calls. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558, fn. 3 (D. Colo. 2014). As such, for Count I here, Plaintiff must also plead plausible facts suggesting his receipt of a "telephone solicitation," which is defined in the TCPA's regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). To meet federal pleading standards here, however, "[c]all recipients must do more than" baldly conclude that "the calls in question were telephone solicitations" to plead this key element. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024).

In other words, "[w]hile Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question" in his Complaint, "he is still required to provide more than a conclusory statement that Defendant attempted to solicit" him to make a purchase, in order to satisfy *Iqbal*/*Twombly* and avoid a dismissal on this basis. *Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Instead, "'further factual enhancement'" is needed to plead this essential DNC claim element. *Gulden,* 2017 WL 3841491, at *3 (quoting *Twombly*, 550 U.S. at 557).

Federal district courts nationwide have, therefore, routinely dismissed TCPA DNC claims under Rule 12(b)(6) where the plaintiff merely relies on conclusory labels like "advertisement" or "solicitation" but omits additional factual details about the content of the calls, meeting the *Iqbal*/*Twombly* standard, demonstrating receipt of an actionable "telephone solicitation" fitting the statutory definition. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell*, 2025 WL 2533371, at *3–4 (citing *Gulden*, 2017 WL 3841491, at *3, *Andersen v. Nexa Mortg., LLC,* 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023); *Weingrad*, 2024 WL 4228149, at *4.

Here, Plaintiff does not come even close to meeting the settled standards above, as he provides zero content of the subject calls suggesting that they fit the statutory definition of a "telephone solicitation" above. *See, e.g.,* Dkt. 1, ¶¶ 15-29, 48, 50, 54. Instead, <u>all</u> his threadbare Complaint offers is conclusory labels that the calls were "telemarketing" calls. *See, e.g., id*. ¶¶ 16, 20, 21, 27, 28, 29, 48, 50. Countless courts have found such naked allegations are insufficient for a DNC claim to survive dismissal at the pleading stage. *See, e.g., Eggleston*, 2022 WL 886094, at *7 ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).); *Smith v. Getmehealthcare, LLC*, 2025 WL 3771271, at *2 (M.D. Fla. Dec. 31, 2025) (dismissing where the complaint failed "to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation"); *Weingrad,* 2024 WL 4228149, at *3–4 (dismissing where plaintiff "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" with no additional call content, and thus did "not plead a statutory violation without 'further factual enhancement'" as required).

Moreover, Plaintiff concludes that all the subject communications were intended for someone else, in that the callers asked to speak with someone named "Darryl" or "Darryl Price," which merely confirms that ***he*** was not being solicited on these calls. Dkt. 1, ¶¶ 23, 26. Courts have found such calls are <u>not</u> "telephone solicitations" fitting the TCPA's statutory definition, as well. *See, e.g., Dahdah*, 2023 WL 5941730, at *3 (dismissing on this basis where, as here, the subject communications were "looking to speak with someone other than" the plaintiff); *Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ("Because neither of the [subject communications] encouraged [the named plaintiff] to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations' under the TCPA."); *Norman v. Northern Ill. Gas Co. Inc*., 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing where plaintiff failed to allege the defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party). Therefore, Count I should be dismissed on these additional grounds.

**<u>Second</u>**, the TCPA's DNC rules do not apply to all phone numbers, like business lines; instead, they can only be invoked by a "residential telephone subscriber." 47 C.F.R. §§ 64.1200(c)(2) & (d). Federal courts have, therefore, widely recognized that plaintiffs bringing DNC claims must allege sufficient non-conclusory facts showing the number at which they received the challenged communications is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Hicks*, 2020 WL 9261758, at *5; *Rogers,* 2023 WL 2646468, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018); *Smith v. Vision Solar, LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Kemen v. Cincinnati Bell Tel. Co., Inc*., 2023 WL

361136, at *5 (S.D. Ohio Jan. 23, 2023); *Gillam,* 2023 WL 2163775, at *4. But just parroting the statutory text or case law on this essential DNC claim element will not suffice to meet the *Iqbal/Twombly* plausibility threshold or avoid a dismissal on this basis, either. *See, e.g., Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar TCPA claim applying only to "residential" lines, noting the plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute").

Moreover, certain courts have recently conducted a thorough analysis of the relevant statutory text and legislative history, in accordance with recent Supreme Court rulings on proper statutory construction principles, and in doing so have concluded that cell phone numbers, which are not fixed to a residence, are <u>not</u> "residential" numbers under the plain language of the statute. *See, e.g., Lowrey v. Twilio, Inc.,* 2026 WL 2958730, at *6-7 (W.D. Va., Oct. 1, 2026) (ruling that "the statute's 'plain meaning' and its structure show that cellphones are different from residential lines" and finding that "a residential telephone is uniquely tied to a person's dwelling") (citing *inter alia*, *Anthony v. Brian Mktg. Grp*., 2026 WL 2685650, at *6 (S.D. Fla. Sept. 11, 2026) and *Cunningham v. Britereal Mgmt., Inc.,* 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020)); *see also Koller v. OX AppSec Security, Inc.,* 2026 WL 2935851, at *2-4 (E.D. Mo. Sept. 30, 2026) (ruling similarly).

Here, Plaintiff pleads no facts supporting an inference that he qualifies as a "residential" subscriber within the meaning of the TCPA (*i.e.,* that he actually uses his phone for "residential" purposes). Indeed, there are no allegations <u>at all</u> in his Complaint describing how he uses the number that he claims was unlawfully called. *See generally* Dkt. 1. This pleading defect also warrants dismissal of Count I. *See*, *e.g.*, *Hicks*, 2020 WL 9261758, at *5; *Rogers*, 2023 WL 2646468, at *4.

**<u>Third</u>**, the TCPA's implementing regulations expressly prohibit initiating telephone solicitations to a "residential telephone subscriber ***who has registered his or her telephone number***" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). As certain courts have

found, a plain reading of the unambiguous language of this regulation[5] requires Plaintiff here to plausibly allege that he ***himself*** registered the phone number on which he allegedly received the subject calls on the National DNC Registry. *See, e.g., Rogers,* 2023 WL 2646468, at *4 (dismissing DNC claim, in part, for this reason); *Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing this issue, dismissing DNC claim *with prejudice* on this basis, and holding the "plain [statutory] language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else"). That plain reading of this regulation is logical and harmonizes it with the statutory language in which Congress authorized the creation of a registry of "***residential subscribers who object*** to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added). A contrary reading would mean that anyone could add every number in America to the Registry, even if the owner does not object and consents to marketing calls, which would cause an avalanche of new TCPA lawsuits. But such is not the law or logical, or how the DNC provisions are intended to work.

As applied here, Plaintiff does not indicate ***who*** registered the phone number upon which he received the at-issue calls, only that it "has been" registered since 2012. *See* Dkt. 1, ¶ 19. This inartful pleading suggests that the number "could have been registered by previous owners of th[e] numbers rather than by Plaintiff[.]" *Rogers*, 2023 WL 2646468, at *4. Moreover, dismissal is particularly appropriate in this instance given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [his] own number[] on the DNC list[.]" *Id*. Thus, Count I fails for this additional reason.

---

[5] It is axiomatic that if a statute's language is plain and unambiguous—like the TCPA's language is—federal courts need not analyze the statute any further when performing a construction analysis and instead "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015). *See also Kirtz v. Trans Union LLC,* 46 F.4th 159, 162 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024). In short, the plain language is dispositive.

**III. Plaintiff Fails to Plead Facts Supporting Key Elements of his MTSA Claim (Count II).**

As Plaintiff's state claim in Count II rests on the same ill-pled allegations as his TCPA claim, it should be dismissed for the same reasons. *See, e.g., Hicks*, 2020 WL 9261758, at *5. Beyond that, Plaintiff's Complaint contains no facts, beyond his bald conclusions, supporting an inference that "automated" technology covered by the MTSA was used here, let alone by who. *See, e.g.,* Dkt. 1, ¶¶ 22, 24, 54-55, 58. This further warrants dismissal of Count II. *See, e.g., Andersen,* 2024 WL 3762098, at *4 (dismissing equivalent TCPA claim under Rule 12(b)(6) for the same reason).

**IV. Plaintiff Fails to Plead Facts Supporting His Requests for Treble Damages.**

Plaintiff further concludes that any violation as to his claims in Counts I and II was necessarily "knowing" or "willful" entitling him to treble damages (*see* Dkt. 1, ¶¶ 49, 62), but he pleads no supporting facts. Those allegations should thus be dismissed, at the minimum. *See, e.g., Canary v. Youngevity Int'l, Inc*., 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for willful/knowing violations that "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true.").

**V. Any Dismissal Should Be With Prejudice.**

Lastly, federal district courts may properly dismiss complaints with prejudice under Rule 12(b)(6) where a plaintiff already had a chance to amend (especially after a dispositive motion or pre-motion notice letter is filed) and failed to cure the prior complaint's deficiencies. *See, e.g., Phillips v. Dukes,* 2018 WL 835709, at *7 (D. Md. Feb. 12, 2018) (dismissing with prejudice after deficiencies were raised in defendants pre-motion conference request); *Johnson v. Cap. One*, 2019 WL 1936147, at *4 (D. Md. Apr. 30, 2019) (same). *See also Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the

benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"); *Mathis v. Interstate Cont. Cleaning Servs., Inc.,* 2018 WL 6421733, at *3 (D.S.C. July 9, 2018), *report and rec. adopted,* 2018 WL 6411446 (D.S.C. Dec. 5, 2018) ("[T]he undersigned finds that the amended complaint fails to cure the defects identified in the plaintiff's original complaint, and, therefore, this case should be dismissed with prejudice.). This rings true here. As the Court will recall, Plaintiff had an opportunity to amend his Complaint to address the pleading deficiencies discussed above, which are outlined in NEXA's pre-motion conference request letter. *See* Dkt. 19. But Plaintiff declined to amend. This leads to but one logical conclusion: there are no plausible facts that Plaintiff could possibly add to bring his defective pleading into compliance with *Iqbal*/*Twombly* and, therefore, that any attempt at amendment here would be futile. Consequently, a complete dismissal with prejudice is appropriate.

**CONCLUSION**

For all of the reasons stated above, and for such further reasons as may be presented to the Court, Plaintiff's entire Complaint should be dismissed with prejudice under Rule 12(b)(6).[6]

---

[6] NEXA has not yet determined whether Plaintiff's claims are subject to an arbitration agreement between the parties and, therefore, submits this Motion to comply with its immediate obligations to respond to the Complaint under Rule 12(b). Should NEXA make such a determination through discovery, NEXA will promptly notify the Court and move to compel arbitration. This Motion should not be viewed as a waiver of NEXA's arbitral rights, or as a concession that Plaintiff has standing or as to venue, or that he can litigate his claims individually or on a class basis in this forum.

Dated: October 15, 2026

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: /s/ John W. McGuinness

John W. McGuinness
A. Paul Heeringa (admitted *pro hac vice*)
1700 M Street, NW 4th Floor
Washington, D. C., 20036
Tel: (202) 585-6540
Fax: (310) 996-7030
Email: jmcguinness@manatt.com
pheeringa@manatt.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on October 15, 2026, a copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

/s/ John W. McGuinness
John W. McGuinness

*Counsel for Defendant*